JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1571 JGB (KKx)** | Date | January 5, 2023 |
|---|---|---|---|
| Title | *Samuel Ramirez v. Builder Services Group, Inc.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 14); (2) REMANDING the Case to Riverside Superior Court; (3) VACATING the January 9, 2023 Hearing on the Motion to Remand; and (4) VACATING the January 9, 2023 Scheduling Conference (IN CHAMBERS)

Before the Court is a motion to remand filed by Plaintiff Samuel Ramirez. ("Motion," Dkt. No. 14.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the January 9, 2023 hearing.

## I.   BACKGROUND

On August 3, 2022, Plaintiff Samuel Ramirez ("Plaintiff" or "Mr. Ramirez") filed a complaint in the Superior Court of the State of California for the County of Riverside against Defendants Builder Services Group, Inc. ("Defendant") and Does 1-20. ("Notice of Removal," Dkt. No. 1 ¶ 1.) The Complaint alleges six claims: (1) disability discrimination in violation of the Fair Employment and Housing Act (FEHA); (2) failure to provide reasonable accommodations in violation of FEHA; (3) failure to engage in a good faith interactive process in violation of FEHA; (4) retaliation in violation of FEHA; (5) failure to prevent discrimination and retaliation in violation of FEHA; and (6) wrongful termination in violation of public policy. ("Complaint," Notice of Removal Ex. 1.) On September 7, 2022, Defendants removed to this Court on the basis of diversity jurisdiction. (Notice of Removal.)

On November 28, 2022, Plaintiff filed the Motion. (Motion.) In support of the Motion, Plaintiff filed a Request for Judicial Notice. ("Plaintiff's RJN," Dkt. No. 15.) On December 19, 2022, Defendants opposed. ("Opposition," Dkt. No. 18.) In support of the Opposition, Defendants filed a Request for Judicial Notice. ("Defendant's RJN," Dkt. No. 19.) On December 27, 2022, Plaintiff replied. ("Reply," Dkt. No. 20.)

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which (1) a federal question exists or (2) in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683–85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87-88 (2014). However, where the plaintiff contests the removing defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied." Id. at 82.

"In determining the amount in controversy, courts first look to the complaint." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). When a state-court complaint alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls, unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402-404 (9th Cir. 1996). Conversely, "[w]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018); see also Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 82. "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a

prospective assessment of [the] defendant's liability." Lewis v. Verizon Comm'ns. Inc., 627 F.3d 395, 400 (9th Cir. 2010).  Accordingly, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" Campbell v. Vitran Express, Inc., 471 F. App'x. 646, 648 (9th Cir. 2012) (quoting Kenneth Rothschild Trust v. Morgan Stanley, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  "If a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy . . ." Fritsch, 899 F.3d at 788.

The district court may remand a case *sua sponte* or on the motion of a party.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)).  Such questions should be addressed at the outset of a case: "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514 (1868).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447.

## III.  DISCUSSION

The sole argument raised by Plaintiff in the Motion is that Defendant has failed to meet its burden to show that the amount in controversy exceeds $75,000.  (Motion at 4.)  The Court agrees and GRANTS the Motion for the reasons stated below.

### A.  Judicial Notice

Plaintiff requests judicial notice of five rulings (Motion Ex. F):

1.  Order Remanding Case on May 28, 2020 in Paulina Cruz v. Quest Diagnostics Clinical Laboratories, United States District Court, Central District of California, Case No. CV 20-4337 RGK (SKx).

2.  Order Remanding Case on April 3, 2019 in Rocio Monarrez v. Walmart Associates, Inc., United States District Court, Central District of California, Case No. CV 19-411 RGK (GJSx).

3.  Order Remanding Case on July 24, 2015 in Francisco Toral v. Sodexo, Inc., United States District Court, Central District of California, Case No. CV 15-2385 PA (MRWx).

4.  Order Remanding Case on November 12, 2015 in Monica Sevilla v. Life Care Centers of America, Inc., et al., United States District Court, Central District of California, Case No. CV 15-5977 PSG (GJSx).

      5.   Order Remanding Case on May 6, 2014 in <u>Lilian Jeannette Galeano v. AMB Janitorial Services, Inc.</u>, United States District Court, Central District of California, Case No. CV 14-3117 DSF (MANx).

      Defendant requests judicial notice of the following:

      1.   <u>Raymond Adame v. Alcoa Fastening Systems, et al.</u>, 2015 Jury Verdicts LEXIS 7583, State of California, Superior Court for the County of Los Angeles, Case No. BC480230 (June 30, 2015).  (Defendant RJN Ex. 1.)

      2.   <u>Harold Carter v. Federal Express Corporation</u>, 2019 Jury Verdicts LEXIS 8403, State of California, Superior Court for the County of Los Angeles, Case No. BC658923 (March 25, 2019).  (Defendant RJN Ex. 2.)

      3.   <u>Anahit Shirvanyan v. Los Angeles Community College District</u>, 2018 Jury Verdicts LEXIS 36676, State of California, Superior Court for the County of Los Angeles, Case No. BC633224 (December 20, 2018).  (Defendant RJN Ex. 3.)

      4.   <u>Eric Nimmo v. Montage Hotels & Resorts, LLC</u>, 2012 Jury Verdicts LEXIS 2353, State of California, Superior Court of Orange County, Santa Ana, Case No. 30-2009-00117583-CU-WT-CJC (February 16, 2012).  (Defendant RJN Ex. 4.)

      5.   <u>John Quemada v. Cordoba Corporation</u>, 2019 Jury Verdicts LEXIS 125719, State of California, Superior Court for the County of Los Angeles, Case No. BC621735 (December 9, 2019).  (Defendant RJN Ex. 5.)

      The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Proceedings of other courts, including orders and filings, are the proper subject of judicial notice when directly related to the case.  See <u>United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")  A court may also consider jury verdicts to establish the amount in controversy.  See <u>Simmons v. PCR Tech.</u>, 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2022).  The Court GRANTS Plaintiff's RJN and Defendant's RJN.

**B.  Citizenship**

      A defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.  Complete diversity of citizenship is required, i.e., "the citizenship of each plaintiff [must be] different from that of each defendant."  <u>Hunter v. Philip Morris USA</u>, 582 F.3d 1039, 1043 (9th Cir. 2009).

Mr. Ramirez is a citizen of California. (Complaint ¶ 1.) Defendant is a citizen of Florida. (Notice of Removal ¶ 15.) For purposes of jurisdiction, the citizenship of defendants sued under fictitious names is disregarded. 28 U.S.C. § 1441(b)(1); Soliman v. Phillip Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002). There is complete diversity among the parties.

**C. Amount in Controversy**

The removing defendant bears the burden of proving the amount in controversy exceeds $75,000. Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007). If the complaint does not allege that the amount in controversy has been met, the removing defendant must plausibly allege in its notice of removal that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee, 574 U.S. at 88 (2014). If a plaintiff questions the defendant's allegations, the defendant must establish that the jurisdictional requirement has been met by a preponderance of the evidence. Gaus, 980 F.2d at 566-67.

The Complaint does not allege that the amount in controversy exceeds $75,000. (See Complaint.) The Court must determine whether Defendant meets its burden to demonstrate that the amount in controversy meets the jurisdictional threshold. As explained below, the Court finds that Defendant's estimates for lost wages are excessive and its estimates for emotional distress damages and punitive damages are speculative. Assuming without deciding that an award of $30,000 in attorney's fees would be appropriate, the total amount in controversy would still fall below the minimum amount necessary to establish subject matter jurisdiction over the case.

### 1. Lost Wages

Defendant estimates that Plaintiff could claim $54,400.00 in back pay. (Notice of Removal ¶ 24.) Defendant arrives at this figure based on the following assumptions: an hourly rate of $17.00, a 40-hour work week, and a 20-month period from January 4, 2022 (the approximate date Plaintiff was fired) through September 2023 (approximately one year from the date of removal). (Id.) Plaintiff argues that Defendant exaggerates his economic damages by failing to consider his duty to mitigate his losses and calculating damages through September 2023, rather than the date of removal. (Motion at 4.) The Court agrees with Plaintiff.

Although courts may consider both back and front pay to determine the amount in controversy, many courts in this district have declined to project future lost wages beyond the date of removal. See, e.g., Toral v. Sodexo, Inc., 2015 WL 13310279, at *3 (C.D. Cal. July 24, 2015) (observing that courts in the Central District and elsewhere are "skeptical about projecting lost wages beyond the date of removal" and declining to do so); Fortescue v. Ecolab Inc., 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014) (collecting cases declining to project lost wages past the date of removal and holding the same); Soto v. Kroger Co., 2013 WL 3071267, *3 (C.D. Cal. June 17, 2013); Sasso v. Noble Utah Long Beach, LLC, et al., 2015 WL 898468, at *4 (C.D. Cal. Mar. 3, 2015); Aguilar v. Wells Fargo Bank, 2015 WL 6755199, *4 (C.D. Cal. Nov. 3, 2015); Paris

v. Michael Aram, Inc., 2018 WL 501560, *2 (C.D. Cal. Jan. 22, 2018); Barrera v. Albertsons LLC, 2019 WL 1220764, *2 (C.D. Cal. Mar. 15, 2019); see also Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005), as amended on denial of reh'g and reh'g en banc (Feb. 13, 2006) ("When the amount is not facially apparent from the complaint, the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.") (internal quotations and citations omitted). The Court declines to project lost wages through September 2023, an arbitrary date Defendant has selected to artificially inflate the amount in controversy, and will calculate damages as of the date of removal.

While the Opposition argues that the Court should not consider Plaintiff's duty to mitigate (Opposition at 3-4), Defendant's own Notice of Removal states, "Prevailing plaintiffs may be entitled to back pay, which is compensation in the amount they would have received but for the adverse employment action, less sums obtained through mitigation. See Parker v. Twentieth Century-Fox Film Corp., 3 Cal. 3d 176, 181 (1970)." (Notice of Removal ¶ 24.) The Court agrees with Plaintiff (and Defendant, before attempting to avoid remand), that the Court must consider Plaintiff's duty to mitigate damages in determining the amount in controversy. See Lamke v. Sunstate Equipment Co., LLC, 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004). In California, "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." Shaffer v. Debbas, 17 Cal. App. 4th 33, 41 (1993), as modified (July 13, 1993); accord Brewington v. United States, 2015 WL 4511296, at *7 (C.D. Cal July 24, 2015). On or about January 3, 2022, Plaintiff obtained subsequent employment at a warehouse, earning $19 per hour and thus mitigating his damages from Defendant. (Motion at 5; Reply at 3.)

The proper calculation of Plaintiff's potential mitigated economic damages, calculated through the date of removal, is as follows: Plaintiff received his final paycheck on January 7, 2022; Defendant removed on September 7, 2022. (Motion at 5; Notice of Removal.) Adopting Defendant's assumptions of a 40-hour work week and a $17 hourly wage, Plaintiff's economic damages over this 8-month period amounts to $21,760.00. (See Motion at 5.)

**2. Emotional Distress Damages**

Defendant argues that the Court should assume Plaintiff may recover emotional distress damages "in an amount at least equal to the amount of economic damages," but also possibly far more, citing various jury verdicts it believes are analogous. (Opposition at 6.)

A district court may consider emotional distress damage awards in "similar" cases when calculating the amount in controversy. Kroske, 432 F.3d at 980; Johnson v. Hertz Loc. Edition Corp., 2017 WL 111296, at *3 (C.D. Cal. Jan. 9, 2017). "To establish probable emotional distress damages, a defendant may introduce evidence of jury verdicts from cases with analogous facts." Daley v. Walmart Stores, Inc., 2018 WL 3104630, at *5 (C.D. Cal. June 21, 2018). "While settlements and jury verdicts in similar cases can provide evidence of the amount in controversy,

the cases must be factually identical or, at a minimum, analogous to the case at issue." Aguilar v. Wells Fargo Bank, N.A., 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015) (quoting Mireles v. Wells Fargo Bank, N.A., 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012)).  District courts may "demand[] a high level of factual similarity."  Daley, 2018 WL 3104630, at *5.  Where a defendant fails to provide closely analogous authorities, or to thoroughly explain why an award is factually similar to the case at hand, a district court may find the argument too speculative to credit and will decline to include emotional distress damages in the amount in controversy.  See Reyes v. Staples Off. Superstore, LLC, 2019 WL 4187847, at *4 (C.D. Cal. Sept. 3, 2019); Toral, 2015 WL 13310279, at *3; Bezabeh v. Envirobusiness, Inc., 2017 WL 4271210, at *4 (C.D. Cal. Sept. 25, 2017).

The cases Defendant relies upon are not closely analogous to the instant dispute, let alone "factually identical."  Aguilar, 2015 WL 6755199, at *5.  Plaintiff worked for Defendant and was primarily responsible for loading and unloading trucks.  (Complaint ¶ 11.)  He sustained minor injuries to his fingers and lower back after a car accident on December 9, 2021.  (Motion at 7; Complaint ¶ 12.)  He returned to work with light duty restrictions nine days later and was told by doctors that he could return to full duty by January 18, 2022.  (Complaint ¶ 15.)  When Plaintiff returned to work on December 16, 2021, he was initially accommodated.  (Id.)  On January 4, 2022, he was fired.  (Id. ¶ 16.)  Defendant told him that "there was nothing he could do in the warehouse with his restrictions."  (Id.)  As Plaintiff explains, unlike the cases Defendant cites, his claims are rather modest.  "Mr. Ramirez does not allege years of prolonged discrimination and retaliation, nor did his employer fabricate misconduct as pretext to terminate him from a job he held for years.  He does not allege that his work caused excruciating, life-altering pain, nor has he requested extended accommodations.  In fact, Mr. Ramirez's only request was to continue working modified duty until his restrictions were lifted."  (Motion at 7.)

The jury awarded the plaintiff in Harold Carter v. Federal Express Corporation $5 million in past and future emotional distress damages.  (Defendant RJN Ex. 2.)  That plaintiff also suffered injuries orders of magnitude greater than Mr. Ramirez: he suffered a "life-threatening spinal cord injury" and was placed on work restrictions for approximately four months.  Carter v. Federal Exp. Corp., 2018 WL 8222315, at *1 (Cal. Super. Dec. 07, 2018).  When he returned to work, his employer "ignored his physical restrictions and complaints of pain," gave him "increased work" and "false write-ups," subjected him to increased discrimination and retaliation, falsely accused him of submitting erroneous time cards, refused to interview him when he made formal complaints, fired him, and then only after firing him responded to his discrimination complaint, stating that the claim had "been thoroughly investigated."  Id.  Because these facts are not analogous to the instant case, the Court declines to consider Harold Carter in its analysis.

Defendant notes that the jury awarded the plaintiff in Anahit Shirvanyan v. Los Angeles Community College District $2.75 million in past and future noneconomic losses, but the verdict reporter cited by Defendant does not indicate how much, if any, of the award was for emotional distress, which prevents the Court from making a claim-specific comparison.  (See Defendant RJN Ex. 3.)  The facts of that case are also dissimilar: the plaintiff worked for her employer for

eight years; suffered from nerve damage, carpal tunnel syndrome and a serious shoulder injury; "was often in tears by the end of her shift due to the pain"; was terminated when she attempted to return to work; and subsequently suffered major depressive disorder. Shirvanyan v. Los Angeles Cmty. Coll. Dist., 59 Cal. App. 5th 82, 89-93 (2020). Unlike Ms. Shirvanyan, Plaintiff worked for Defendant for eight months, not eight years, and does not allege that he suffered from depression or that he lost his self-worth as a result of Defendant's conduct. (See Reply at 6.) Most importantly, the Shirvanyan judgment was *reversed and vacated* on appeal, with instructions to conduct a new trial. 59 Cal. App. 5th at 107. The Court declines to consider the case in its analysis.

Defendant also cites to Raymond Adame v. Alcoa Fastening Systems, et al. and Eric Nimmo v. Montage Hotels & Resorts, LLC in the Opposition, but simply restates at a high level of generality some of the facts of those cases, rather than analogizing to the facts here. (See Opposition at 7-8.) The Court rejects Defendant's "mere[] cit[ation] to a list of other employment cases with large emotional distress damages without analogizing or explaining how those cases are similar to this instant action." Barrera, 2019 WL 1220764, at *3. Because "Defendant's estimate for Plaintiff's emotional distress claim is based on speculation and not supported by facts . . . the Court therefore has no basis to include Defendant's estimate for Plaintiff's emotional distress damages in the amount in controversy." Id.

### 3. Punitive Damages

A district court may include punitive damages in the amount of controversy calculation under certain circumstances. See Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). However, "courts have often rejected such arguments where defendant fails to show that the cited cases have analogous facts to the action at issue, and have declined to find that the amount in controversy is satisfied where defendants' arguments regarding the amount of punitive damages are deemed too speculative." Molnar v. 1-800-Flowers.com, Inc., 2009 WL 481618, at *6 (C.D. Cal. Feb. 23, 2009).

Defendant cites a single case that it claims is analogous to the instant action, John Quemada v. Cordoba Corporation. (Opposition at 8.) The plaintiff in Quemada brought similar causes of action to those asserted here against his former employer and was awarded $1.5 million in punitive damages. (Defendant RJN Ex. 5.) Despite this facial similarity, the facts in that case are too dissimilar and extreme for the Court to consider them here. The plaintiff in Quemada primarily alleged age discrimination, not disability discrimination. See Quemada v. Cordoba Corporation, No. BC621735 (Cal. Super. Dec. 06, 2019), JV No.: 2004230004, 2019 WL 8581402. His supervisor instructed him to move 1,000 heavy sandbags at a worksite, trying to get him to resign. Id. He alleged that moving the sandbags caused him to develop a severe orthopedic injury, which he reported to his supervisor. Id. When Mr. Quemada requested accommodations, his supervisor laughed at him, instructed him to keep working and told him "old guys can't do this job." Id. Thereafter, his employer refused to provide him accommodations, took away his essential job functions and reassigned them to younger workers. Id. The work he was assigned aggravated his injury, which caused him to go on medical leave,

and when he returned, his supervisor assigned him the same exact work; the inference was that the supervisor did this intentionally.  See id.  The Court agrees with Plaintiff that Quemada is thus factually distinguishable, in that this case does not involve "hazing-style work assignments," severe injuries, intentional reassignment to injury-aggravating positions, or an age discrimination claim.  (See Motion at 9.)

Defendant's citation to Quemada "merely illustrate[s] that punitive damages are possible, but in no way shows that it is likely or probable in this case."  Killion v. Autozone Stores Inc., 2011 WL 590292, *2 (C.D. Cal. Feb. 8, 2011).  The Court therefore finds that Defendant "has failed to establish by a preponderance of the evidence that punitive damages should be considered."  Reyes, 2019 WL 4187847, at *4; see also Hill v. Avis Budget Car Rental, LLC, 2014 WL 1325556, at *3 (C.D. Cal. Apr. 2, 2014).

### 4. Prospective Attorney's Fees

Courts must include future attorneys' fees recoverable by statute in determination of the amount in controversy.  Fritsch v. Swift Trans. Co. of Ariz., LLC, 899 F. 3d 785, 794 (9th Cir. 2018).  "However, courts should still reject a defendant's calculation of future attorneys' fees if it fails to satisfy its burden of proof using 'summary-judgment-type evidence'."  Reyes, 2019 WL 4187847, at *4 (citing Fritsch, 899 F.3d at 795).

Defendant claims that it has "conservatively estimated a total of $30,000 in attorney's fees," assuming roughly 100 billable hours at $300 per hour.  (Opposition at 10.)  Plaintiff responds that this estimate is "based on pure speculation" and that if Mr. Ramirez is "offered early settlement, it is likely that Plaintiff's legal fees will be significantly less than $30,000."  (Motion at 10.)  The Court declines to resolve the dispute.  Even if the Court accepts the $30,000 attorney's fees estimate, adding it to $21,760.00 in estimated compensatory damages would still fall below the $75,000 jurisdictional threshold.

### 5. Summary

The Court finds that Defendant has failed to meet its burden of proving that the amount in controversy exceeds the amount in controversy jurisdictional requirement.  Though the Court finds Plaintiff may recover $21,760.00 in lost wages, even assuming a potential award of $30,000 in attorney's fees, those figures amount to less than $75,000.  Since the Court lacks subject matter jurisdiction over this case, the Motion is GRANTED.

### IV.   CONCLUSION

For the reasons above, the Court **GRANTS** the Motion.  The January 9, 2023 hearing on the Motion is **VACATED**.  The January 9, 2023 scheduling conference is **VACATED**.  The Court **REMANDS** the action to the Superior Court for the County of Riverside.  The Clerk is **DIRECTED** to close the case.